# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-02577-CMA

LAURA CARRERA,

    Plaintiff,

v.

CARYLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

## ORDER AFFIRMING COMMISSIONER'S DECISION

    This matter is before the Court on Plaintiff Laura Carrera's appeal of the Commissioner's decision denying her claim for disability insurance benefits (DIB). (Doc. # 11.) Exercising jurisdiction under 42 U.S.C. § 405(g), this Court affirms the decision of the Administrative Law Judge (ALJ).

## I. BACKGROUND

    In June 2014, Plaintiff protectively applied for DIB, alleging disability beginning in June 2012, due to a number of impairments. (Doc. # 9-5, p. 2; # 9-6, p. 21.) On September 23, 2015, the ALJ denied Plaintiff's request for DIB following a hearing. (Doc. # 9-3, p. 17–37.) In December 2015, the Appeals Council reviewed the ALJ's denial and remanded for further evaluation of Plaintiff's mental and social limitations in consideration of Plaintiff's residual functional capacity (RFC). (*Id.* at 43–45.) The

Council also ordered the ALJ to evaluate the opinion of the nontreating physician Dr. Lynne Gillick, Psy. D. (*Id.* at 45.)

On remand, the ALJ held a new hearing, during which Plaintiff and a vocational expert testified. (Doc. # 9-2, p. 65–77.) The ALJ then issued another unfavorable decision on May 31, 2016, wherein the ALJ found that Plaintiff had severe physical and mental impairments but was not disabled or entitled to DIB because she retained the RFC to perform unskilled, sedentary work and jobs existing in significant numbers in the national economy. (*Id.* at 12–29.) The Appeals Council denied Plaintiff's request for review, and the ALJ's May 31, 2016, decision stands as the final decision of the Commissioner. (*Id.* at 2–4.)

## II. <u>STANDARD OF REVIEW</u>

Review of the ALJ's disability finding is limited to determining whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The Court will not "reweigh the evidence or retry the case" but must "meticulously examine the record

as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

### III. <u>LAW AND ANALYSIS</u>

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. §§ 423(d)(1)(A). The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are whether: (1) the claimant is currently working; (2) the claimant has a severe impairment; (3) the claimant's impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) the impairment precludes the claimant from doing her past relevant work; and (5) the impairment precludes the claimant from doing any work. *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

In this case, the ALJ proceeded through the first three steps in the sequential process. The ALJ concluded that Plaintiff (1) had "not engaged in substantial gainful activity since July 15, 2012, the alleged onset"; (2) suffered from "the following severe impairments: bipolar disorder/affective disorder, Post Traumatic Stress Disorder (PTSD), disorders of the spine, obesity, and right ankle tendonitis"; and (3) did not have an "impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments." (Doc. # 9-2, pp. 14–16.)

Before addressing the fourth step, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except as follows:

> The [Plaintiff] can perform unskilled work consistent with a Specific Vocational Preparation [SVP] level of two or less as defined by the Dictionary of Occupational Titles. The [Plaintiff] can perform work with occasional interaction with supervisors, coworkers, and the public.

(*Id.* at 18.)

At the fourth step, the ALJ determined Plaintiff was unable to perform any past relevant work. (*Id.* at 29.) At the final step of the analysis, the ALJ found, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[,]" including addressing clerk, surveillance system monitor, and escort vehicle operator, as defined by the Dictionary of Occupational Titles (DOT). (*Id* at 30.)

On appeal, Plaintiff contends (1) the ALJ failed to include in the RFC determination all of Plaintiff's mental limitations, as assessed by Dr. Gillick, particularly

4

Dr. Gillick's conclusion that Plaintiff has moderate limitations in concentration, persistence, and pace; and (2) the ALJ posed a flawed hypothetical question to the vocational expert, resulting in an erroneous job evaluation. The Court finds that neither contention supports reversing the ALJ's decision.

### A. THE RFC DETERMINATION AND DR. GILLICK'S OPINION

The Court first finds that the ALJ appropriately weighed the conclusions of Dr. Gillick in reaching the RFC determination, which is supported by substantial evidence in the record.[1] In pertinent part, Dr. Gillick concluded

> [Plaintiff's] ability to sustain concentration and persist in work
> related activity at a reasonable pace is likely to be
> moderately impaired because of her posttraumatic stress
> disorder, depression, anxiety, and her physical pain. Her
> ability to maintain effective social interaction on a consistent
> and independent basis with supervisors, coworkers, and the
> public; and deal with normal pressures in a competitive work
> setting is likely to be moderately-to-markedly impaired
> because of posttraumatic stress disorder.

(Doc. # 9-31, p. 23–24.) The ALJ repeated these conclusions when determining Plaintiff's RFC and stated that he afforded Dr. Gillick's opinion "some weight." (Doc. # 9-2, p. 27.) The ALJ emphasized Dr. Gillick's additional "determination that [Plaintiff's] ability to understand, carry out, and remember instructions both simple and complex was intact." (*Id.* at 25.) The ALJ's subsequent RFC determination that Plaintiff could undertake unskilled work with an SVP of only a one or two adequately considered Dr.

---

[1] Plaintiff does not appear to challenge the ALJ's assessment of her physical impairments or the RFC's consequent determination that she could do sedentary work. This Order, therefore, focuses only on the RFC as it relates to Plaintiff's mental impairments.

Gillick's opinion, along with a host of other evidence in the record, including other physician opinions and medical evaluations.

For example, the ALJ considered Plaintiff's psychiatric evaluation from July 2012 where she reported no trouble shopping for groceries, paying bills, or balancing a bank account. (*Id.* at 19.) The ALJ considered Plaintiff's employment screening from 2013, where Plaintiff was "released without limitations," and her involvement in vocational rehabilitation services, where she expressed interest in working in customer care and was informed that "her chances of being successfully employed were very good." (*Id.* at 22–23.) The ALJ discussed Plaintiff's ability to care for her three young children at home without any assistance as showing a "higher level of physical and mental functioning than [she] alleges." (*Id.* at 24.) The ALJ detailed evidence signifying that Plaintiff could occasionally interact with supervisors, coworkers, and the public, including her ability to participate appropriately in group therapy, shop for groceries, and attend all her medical appointments without having to avoid the waiting room. (*Id.* at 25.) The ALJ also considered Plaintiffs VA assessment, which found her "capable of gainful employment," and her Global Assessment Functioning scores, which indicated economic and environmental issues but not "intrinsic components of [Plaintiff's] mental functioning with respect to the ability to perform the requirements of simple, unskilled work." (*Id.* at 28.) This and other evidence in the record are sufficient to support the ALJ's RFC determination. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We may not displace the agency's choice between . . . conflicting views, even [if] the court [could] have made a different choice had the matter been before it de novo.").

To the extent Plaintiff objects to ALJ's failure to assign greater weight to each and every mental limitation highlighted by Dr. Gillick, that argument is misplaced. While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that an ALJ "discuss every piece of evidence." *Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014). Moreover, the ALJ appropriately discussed the challenged limitations when assessing the severity of Plaintiff's mental impairment in steps two and three of the review process. Contrary to Plaintiff's allegations, that assessment does not automatically equate to an RFC determination, nor do those limitations necessarily translate into work-related functional limitations. *Bales*, 576 F. App'x at 798 ("[T]he ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment).

Because Plaintiff has failed to establish error in the ALJ's assessment of Dr. Gillick's opinion or demonstrate that the RFC is unsupported by substantial evidence, reversal is not warranted.

### B. THE HYPOTHETICAL POSED TO THE VE

The Court also finds no reversible error with regard to the ALJ's hypothetical question to the VE. The ALJ questioned the VE as follows:

> Let me give you a hypothetical situation. Assume an individual same age, education, work background as the range of sedentary. Non-exertional limitations of no complex tasks, SVP 2 or less, unskilled work. *Occasional dealing with the general public, occasional dealing with co-workers.* Are there jobs compatible with those limitations?

7

(Doc. # 9-2, p. 74–75.) The VE then identified several jobs, including "addressing clerk," "surveillance system monitor," "document preparer, microfilming,"[2] and "escort vehicle operator." (*Id.* at 75–76.)

Plaintiff argues that the ALJ's failure to include "occasional interaction with supervisors" in addition to the general public and co-workers necessarily skewed the VE's response. (Doc. # 11, pp. 5–6.) In other words, according to Plaintiff, had the ALJ included supervisors in the hypothetical, the VE would not have listed the above jobs. Thus, the ALJ's reliance on those jobs was erroneous.

In making this argument, as Defendant points out, Plaintiff overlooks that the DOT descriptions of the above jobs all include interactions with supervisors.[3] Indeed, the vocational information about these jobs includes, under the heading "Communicating with Other Workers": "[p]roviding information to supervisors, fellow workers, and subordinates." The descriptions do not separate out time spent with supervisors from time spent with co-workers. Thus, it is unlikely that the inclusion of "supervisors" in the ALJ's hypothetical to the VE would have altered the VE's job suggestions. Nor was it unreasonable for the ALJ to rely on the VE's job recommendations. Reversal is not, therefore, warranted on these grounds.

---

[2] The ALJ declined to include this job in the ultimate decision based on the VE's statements that it is "outdated" and "very seldom done anymore." (Doc. # 9-2, pp. 75–76.)
[3] The DOT can be found online at http://www.occupationalinfo.org/.

## IV. CONCLUSION

Because Plaintiff has not identified any reversible error and there is substantial evidence showing that the ALJ was justified in her decision, the Court AFFIRMS the Commissioner's denial of Plaintiff's claim for DIB.

DATED: August 17, 2017

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge